UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SUBURBAN REALTY LP,

      Plaintiff,

                                    Case No. 1:25-cv-137

      v.

                                    JUDGE DOUGLAS R. COLE

WAEL SHARAYDEH,

      Defendant.

## OPINION AND ORDER

This case involves a lease dispute. Defendant Wael Sharaydeh d/b/a VIP Wireless & Smoke Shop (VIP Smoke Shop) moves to dismiss, arguing that it had a unilateral right to cancel the lease at issue here some fourteen months after that lease started. (Doc. 2). The Court disagrees. And, because VIP Smoke Shop seeks dismissal solely on that basis, the Court **DENIES** its motion.

## BACKGROUND[1]

In October 2021, VIP Smoke Shop entered an agreement to lease shopping center retail space from Plaintiff Suburban Realty LP (Suburban Realty). (Doc. 1-1, #6, 10). This lease, (attached to the Complaint as Exhibit A), was set to run for five years, beginning on December 1, 2021. (*Id.* at #10). There was, however, a problem. At the time the parties executed the lease in October, another smoke shop (MD Vape)

---

[1] The Court draws these facts from the Complaint originally filed in state court, (Doc. 1-1), because that version of the complaint contains the exhibits the parties reference. Because this matter is before the Court on Defendant's motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the Complaint's allegations to recount the case's background, it reminds the reader that they are just that—allegations.

was currently occupying the premises. (*Id.*). MD Vape also had an option to renew *its* lease to that same property on or before December 1, 2021. (*Id.*). So VIP Smoke Shop and Suburban Realty, anticipating that MD Vape might not vacate the property, agreed in their lease that if MD Vape renewed its preexisting lease, then the VIP Smoke Shop lease would become void. (*Id.*).

The October lease agreement also addressed another possibility (and one more relevant here): that MD Vape might instead become a holdover tenant (not renewing its lease but also refusing to vacate). On this front, the VIP Smoke Shop lease provided that Suburban Realty would use its "commercially reasonable best efforts to cause MD Vape to quit the Premises as soon as practicable." (*Id.*). Assuming that Suburban Realty was successful in those efforts, the parties' five-year lease period would begin the first day of the calendar month following MD Vape's departure and Suburban Realty's completion of any repairs or maintenance necessary to make the property "rent ready." (*Id.*). But in language key to VIP Smoke Shop's argument in the instant motion, the lease then went on to provide that if Suburban Realty "has not yet made the Premises available to Tenant by May 1, 2022, Tenant may at any time thereafter cancel this Lease by written notice to Landlord." (*Id.*).

From what the Court can tell, MD Vape in fact became a holdover tenant, and Suburban Realty removed it from the property only after prevailing in "protracted litigation." (*Id.* at #13). Then, on September 19, 2023—roughly a year and half after the May 1, 2022, deadline noted above—the parties in this case signed a notarized letter, (attached to the Complaint as Exhibit B), agreeing that the five-year lease they

had signed on October 11, 2021, would commence on the first day of the next month—

October 1, 2023. (*Id.* at #7, 13).

But then things took yet another turn. VIP Smoke Shop, "through no fault of

Suburban, failed to obtain all … permits necessary to occupy the leased premises."

(*Id.* at #7). And as it had not taken occupancy, VIP Smoke Shop also chose not to pay

any rent. (*Id.*). This state of affairs continued for roughly fourteen months, until

December 6, 2024, at which time VIP Smoke Shop's attorney sent a letter, (attached

to the Complaint as Exhibit C), purporting to "exercis[e] [its] option to cancel this

Lease" because the property was not made available by the original May 1, 2022,

deadline. (*Id.* at #7, 14). This cancellation letter also noted that if Suburban Realty

could resolve the permitting issues with the City of Fairfield, VIP Smoke Shop would

be happy to resume negotiations regarding leasing that space. (*Id.* at #14).

Suburban Realty maintains that this purported cancellation violates the

parties' retail lease and has no effect, in turn meaning that VIP Smoke Shop breached

the lease. (*Id.* at #7). And citing the lease's default provision, Suburban Realty sued

VIP Smoke Shop in Ohio state court for the entire value of the lease—$581,794.84.

(*Id.* at #7–8). VIP Smoke Shop, relying on diversity jurisdiction, removed the case to

this Court before being served. (Doc. 1). VIP Smoke Shop then moved to dismiss under

Federal Rule of Civil Procedure 12(b)(6). (Doc. 2). That motion has been briefed and

is now ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

A court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, the Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* at 344.

## LAW AND ANALYSIS

VIP Smoke Shop's Motion to Dismiss rests—in its entirety—on the claim that "the plain and unambiguous language of the Lease" conferred on VIP Smoke Shop a "contractual right" to cancel the lease "at any time" because the property was not made available by May 1, 2022. (Doc. 2, #20–21). And according to VIP Smoke Shop, because it exercised that contractual right—thereby voiding the lease—there can be

4

no breach of contract. (*Id.* at #21). Suburban Realty, conversely, maintains that the lease did not grant VIP Smoke Shop the "unilateral authority" to cancel their agreement, or at the very least, that VIP Smoke Shop waived that right by signing the commencement letter in September 2023. (Response, Doc. 10, #37, 41). Thus, the Court must answer today both (1) whether the lease granted VIP Smoke Shop a contractual right to opt-out, and (2) if so, whether VIP Smoke Shop still could exercise that right when it did so on December 6, 2024.

In Ohio,[2] if a contract is clear and unambiguous, then its interpretation is a matter of law. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (Ohio 1984). And the Court finds the provision at issue to be clear and unambiguous, at least as to the question of whether VIP Smoke Shop could terminate the lease after signing the commitment letter in September 2023. The short answer is that VIP Smoke Shop had no such right. Accordingly, the Court denies the Motion to Dismiss (Doc. 2).

To see why, the Court starts with some settled principles of Ohio law that govern contract interpretation. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d

---

[2] The Court interprets the contract under Ohio law. As this is a diversity case, the Court must "appl[y] the law, including the choice of law rules, of the forum state." *Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 415 (6th Cir. 2014). And "Ohio's choice of law rules require a court to apply the law of the state with the most significant relationship to the contract." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996). The Retail Lease was executed in, and concerns property in, Ohio. (Doc. 1-1, #10–12). So the Court applies Ohio law here.

519, 526 (Ohio 1997). And "[t]he first place a court should look in furtherance of that purpose is the contract's plain language." *Ohio Nat'l Life Ins. Co. v. Cetera Advisor Networks, LLC*, No. 1:19-cv-47, 2021 WL 2819838, at *2 (S.D. Ohio July 7, 2021). In doing so, though, a court must not read selected terms in isolation. Rather, a court must read the contract "as a whole." *Foster Wheeler Enviresponse, Inc.*, 678 N.E.2d at 526. If a particular construction would render a condition in a contract meaningless, "and it is possible to give it another construction that would give it meaning and purpose," the court should apply the latter. *Id.* Moreover, if the language of a contract is clear and unambiguous—meaning it can be given a definite legal meaning—then the court should look no further. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011).

Against that legal backdrop, the relevant portion of the parties' lease reads as follows: "[i]f Landlord has not yet made the Premises available to Tenant by May 1, 2022, Tenant may at any time thereafter cancel this Lease by written notice to Landlord in which event this Lease will become void and of no further effect." (Doc. 1-1, #10). VIP Smoke Shop interprets this to mean that if the property was not made available by May 1, 2022, it has a unilateral right to cancel the lease, "at any time thereafter"—just like the lease says. (Doc. 2, #21; Doc. 13, #57). That is, VIP Smoke Shop contends that it has no deadline to exercise that right. Under its theory, VIP Smoke Shop could move into the property, make rent payments for, say, three years of the five-year term, and nonetheless retain the right to terminate the lease at will.

6

According to Suburban Realty, VIP Smoke Shop is essentially arguing (1) that making the property available by the May date is a "condition precedent" of the parties' lease, (Doc. 10, #40–41), and (2) that because that condition did not occur, the lease never became effective. Then, to combat that result, Suburban Realty cites case law stating both that condition precedents are disfavored and that they can be waived. (*Id.* at #40–42). So, Suburban Realty says, VIP Smoke Shop has waived any right it may have had to challenge the formation of the lease here on those grounds. (*Id.*).

VIP Smoke Shop, for its part, argues that Suburban Realty errs in claiming that VIP Smoke Shop is treating the cancellation provision as a condition precedent to the formation of the lease itself. (Doc. 13, #55). Rather, VIP Smoke Shop says that "the cancellation provision was triggered by Plaintiff's failure to perform under the Lease *after* it became effective." (*Id.* (emphasis added)). In other words, VIP Smoke Shop says that the language did not create a condition precedent to *formation* but rather created a conditional right for VIP Smoke Shop to cancel the already-in-existence lease.

So, it appears both parties agree that the lease agreement took effect. The dispute centers instead on whether VIP Smoke Shop could exercise a conditional right to terminate that agreement at the time it attempted to do so. VIP Smoke Shop says yes, Suburban Realty says no.

The Court begins its analysis by noting that it agrees with the parties that providing the premises by May 1, 2022, was not a condition precedent to lease

7

formation. The lease itself took effect in October 2021 when the parties executed it.[3] (Doc. 1-1, #6, 12). True, at the time it became effective, it did not confer any immediate possessory rights in the leased property, nor did it even guarantee when such possession would begin. But the contract nonetheless became effective as of that date. As a result, the contract conferred certain rights on each of the parties. Most relevant to the instant dispute, the Court agrees with VIP Smoke Shop that the lease conferred on VIP Smoke Shop a conditional right to terminate the lease. Specifically, if Suburban Realty did not make the premises available to VIP Smoke Shop by May 1, 2022, (the condition) then VIP Smoke Shop had the right to terminate the lease instead of moving forward to take possession of the property for a five-year term (the conditional right).

But that agreement marks the point in the road where the Court and VIP Smoke Shop part ways in their understandings of the contract. VIP Smoke Shop waited some thirty-one months after the condition occurred (or failed to occur, depending on how one wants to characterize it) to seek to exercise its conditional right to cancel the lease. And perhaps even more importantly, rather than exercising its right to cancel, it took actions directly "inconsistent with an intent to claim [that] right." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr., Inc.*, 804 N.E.2d 979, 1000 (Ohio Ct. App. 2004); *see also Eagle Realty Invs., Inc. v. Dumon*, 201 N.E.3d 963, 970 (Ohio Ct. App. 2022) ("A party may waive a contractual right through a voluntary

---

[3] The Complaint states that VIP Smoke Shop entered the lease on or about October 11, 2021. (Doc. 1-1, #6). The lease itself states that it was "made this 11th day of October 2021," (*id.* at #10), but was not signed by Defendant until "this 22nd day of October, 2021," (*id.* at #12). It suffices here that the lease was signed, and became effective, in October 2021.

or intentional act inconsistent with claiming it." (cleaned up)). To expand on that a little, when Suburban Realty failed to make the property at issue available by May 1, 2022, VIP Smoke Shop had a right to terminate the lease. But it did not do so. Nor did it terminate the lease during the sixteen months that it took Suburban Realty to evict MD Vape from the premises. (Doc. 1-1, #13). To the contrary, in September 2023 VIP Smoke Shop signed a notarized "commencement date letter" *agreeing* that the lease would begin on October 1, 2023—a letter entirely inconsistent with exercising its right to terminate the lease rather than move forward. (*Id.*). And then, VIP Smoke Shop let the lease commence and run, with no mention of cancelling, for another fourteen months (during which time it became delinquent on rent). (*Id.* at #7). It sought to terminate the lease only when it failed to obtain the correct permits. (*Id.* at #7, 14 (stating that VIP Smoke Shop "cannot move forward … unless and until he is legally permitted to move")).

Admittedly, the lease says that VIP Smoke Shop "may at any time thereafter cancel." (*Id.* at #10). But taking "at any time" to mean that VIP Smoke Shop can unilaterally terminate the lease for the entirety of its remaining term[4] (once the condition is met) is absurd in the context of the contract as a whole. Indeed, doing so would render other parts of the lease without much meaning. For example, as

---

[4] VIP Smoke Shop's argument appears to go even further. It contends "there was no breach" because the lease was "cancelled and is void." (Doc. 2, #21). But by the time VIP Smoke Shop purported to terminate the lease, it was already fourteen months delinquent on rent. (Doc. 1-1, #7). Thus, under VIP Smoke Shop's interpretation, it had the right to, "at any time," *retroactively* rescind the lease—treating the contract as though it never existed. But this theory is incompatible with leases of real property; Suburban Realty cannot retroactively find a different tenant for months that have already passed.

9

happened in this action, VIP Smoke Shop could simply cancel the lease if Suburban Realty attempted to hold it liable for default. (*Id.* at #6–8, 12). And it is unreasonable to assume that the parties would bury such a lease-warping right deep within a paragraph primarily focused on determining the lease's commencement date under various contingencies. (*Id.* at #10).

At bottom, conditions are one of several ways contracts allocate risks. E. Allan Farnsworth et al., *Contracts: Cases and Materials*, 751 (8th ed. 2013) ("[M]aking an event a condition involves an allocation of the risk of the nonoccurrence of the event."); *see also Royal Indem. Co. v. Baker Protective Servs., Inc.*, 515 N.E.2d 5, 8 (Ohio Ct. App. 1986) ("An important function of contract law is to enforce the parties' agreed-upon allocation of risk." (citing Anthony T. Kronman & Richard A. Posner, *The Economics of Contract Law* (1979))). The contractual provision at issue here addressed the risk that VIP Smoke Shop may not be able to take possession of the property by May 1, 2022. The parties' agreement on that front was that VIP Smoke Shop could walk away from the lease if that happened, free to set up shop elsewhere. But VIP Smoke Shop chose not to exercise that right; instead it opted to move forward with the original lease once the property became available. In electing that path, VIP Smoke Shop waived its conditional right to cancel. Accordingly, the Court denies its Motion to Dismiss (Doc. 2).

10

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant Wael Sharaydeh d/b/a VIP Wireless & Smoke Shop's Motion to Dismiss the Complaint (Doc. 2).

**SO ORDERED.**

November 12, 2025
 **DATE**                                                   DOUGLAS R. COLE
                                                            UNITED STATES DISTRICT JUDGE

11